UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK

Not For Publication

---

In re:  :  Chapter 11

HAIMIL REALTY CORP.  :

      Debtor.  :  Case No. 14-11779 (MEW)

---

DOMINION FINANCIAL CORPORATION,  :

      Plaintiff,  :

v.  :  Adv. Pro. No. 14-02052 (MEW)

HAIMIL REALTY CORP., NYC DEPARTMENT  
OF FINANCE, NYS DEPARTMENT OF  
TAXATION AND FINANCE, and  
"JOHN DOE(S) AND JANE DOE(S)," the names  
being fictitious and unknown to Plaintiffs, the  
persons or parties intended being the tenants,  
occupants, persons or entities, if any, having or  
claiming an interest in or lien upon the premises  
described in the complaint,

      Defendants.

---

## MEMORANDUM DECISION DENYING DEBTOR'S MOTION FOR SUMMARY JUDGMENT

APPEARANCES:

PICK & ZABICKI LLP  
*Counsel to the Debtor*  
369 Lexington Avenue, 12th Floor  
New York, New York 10017

  By: Eric C. Zabicki, Esq.

GLENN BACKER, ESQ.
*Special Counsel to the Debtor*
280 Madison Avenue, Suite 300
New York, New York 10016

    By:    Glenn Backer, Esq.

ALLAN B. MENDELSOHN, ESQ.
*Counsel to Dominion Financial Corporation*
38 New Street
Huntington, New York 11743

    By:    Allan B. Mendelsohn, Esq.

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment (the "SJ Motion") filed by defendant Haimil Realty Corp. (the "Debtor" or "Haimil"), seeking a determination that, based upon the undisputed facts, (i) the Debtor does not owe any sums to plaintiff, Dominion Financial Corporation ("Dominion"), with respect to an installment promissory note in the amount of $3.4 million executed by the Debtor in favor of Dominion in December 2004, and (ii) the amended complaint to foreclose on the mortgage that served as security for the $3.4 million note should be dismissed.

UNDISPUTED FACTS

The Debtor obtained financing from Dominion in connection with a plan to convert a building (the "Property") it owned in New York City into condominium units. In December 2004, the Debtor executed a $3.4 million note at 12% interest in favor of Dominion, secured by a mortgage on the Property.[1] The $3.4 million note included a provision calling for the payment of

---

[1] The $3.4 million note consolidated two earlier notes evidencing indebtedness of Haimil to Dominion. The first was issued on April 3, 2003 in the amount of $1.8 million and the second, in the amount of $1.6 million, was issued on

2

"Additional Interest" equal to 15% of any amount recovered from the sale of condominium units over $5,500,000 (the "Additional Interest"). The $3.4 million note further stated that, following a default, interest would be payable at the rate of 2% per month. The note was scheduled to mature on December 31, 2005. The mortgage provided that upon failure of the Debtor to make any required payments, including installment payments of principal and interest under the $3.4 million note, real estate taxes, water assessments, and insurance premiums, the entire unpaid balance under the $3.4 million note would become due at Dominion's option. The mortgaged Property was later subdivided into seven separate units, comprised of six residential units and one commercial unit.

Starting in 2006, Dominion made additional loans to Haimil. A $4 million note evidencing the additional debt was executed in March of 2008 but was back-dated to November 15, 2006. The notarization of the $4 million note by Dominion's attorney was also back-dated to the 2006 date. The $4 million note provided for interest payments at 12% per year and for default interest at a rate of 2% per month. A back-dated "mortgage" that related to the $4 million note provides that it is "subject and subordinate to" the $3.4 million mortgage. However, the mortgage related to the $4 million note was not recorded and the parties agree that the $4 million note was an unsecured note.

On August 1, 2007, in connection with certain borrowings made by Dominion from Israel Discount Bank ("IDB"), the mortgage related to the $3.4 million note was collaterally assigned to IDB. Thus, IDB's loan to Dominion was secured by an interest in the proceeds of Dominion's loan to Haimil. Once IDB's loan to Dominion was fully repaid, the mortgage related to the $3.4 million note was reassigned to Dominion on July 31, 2012.

---

December 22, 2004, immediately prior to the consolidation of the two notes.

Five of the residential condominium units were sold and released from the mortgage securing the $3.4 million note. Four of the residential units were sold in 2008 and the fifth unit was sold in 2010, and a partial release of mortgage was effected as to each unit after its sale. The payments made from the sale proceeds totaled $7,688,144.74. Dominion asserts that payments were applied first to the $4 million note and that after the sale of the fifth unit in 2010, the $4 million note had been paid in full and the principal balance on the $3.4 million note had been reduced to $1,607,719.23 as of April 28, 2010. Haimil contends that prior payments must be treated as payments on the $3.4 million secured note, and also contends that the payments from the proceeds of the unit sales were sufficient to pay both notes.

On August 29, 2012, Dominion commenced a foreclosure action against the Debtor in New York Supreme Court, alleging that the Debtor had ceased making installment payments under the $3.4 million note in May 2010 and had failed to pay real estate taxes. On May 1, 2014, the state court ordered that a receiver be appointed for the penthouse residential unit at the Property. In addition, the parties entered into a stipulation requiring any rents collected with respect to the commercial unit be applied first to real estate taxes, with any balance segregated until the conclusion of the case.

On June 11, 2014, Haimil filed a chapter 11 petition and, thereafter, the state court foreclosure action was removed to this Court. Haimil filed the SJ Motion on January 12, 2015, as well as leave to file an amendment to assert the statute of limitations as an affirmative defense.[2] Dominion opposed the request for summary judgment. The Court heard argument at a hearing held on March 11, 2015 (the "Hearing"). At the conclusion of the Hearing, the Court rendered its

---

[2] On January 12, 2015, the SJ Motion was mistakenly filed on the docket of the of the Debtor's main chapter 11 case. On March 3, 2015, the SJ Motion was filed on the docket of the adversary proceeding, however, it appears that Dominion received notice of the earlier filing because it correctly filed its opposition to the SJ Motion on the docket of the adversary proceeding on February 13, 2015.

4

decision, briefly stating its reasons, and noting on the record that this written decision would follow.

## DISCUSSION

Federal Rule of Civil Procedure 56(a), made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Haimil contends that there is no genuine issue of material fact as to whether or not the note in the amount of $3.4 million has already been repaid.  In support of that contention, Haimil has made essentially three arguments: (i) the subordination clause in the unfiled mortgage for the $4 million note requires that payments be applied first to the $3.4 million note; (ii) the total payments made by Haimil exceeded the principal amount that Dominion said was outstanding under both notes as of March 12, 2008; and (iii) the words "paid off" appear on a spreadsheet Dominion prepared, on a line item that appears to refer to the $3.4 million note.  Haimil also argues that Dominion failed to file a statement in the form required by Local Bankruptcy Rule 7056-1, and that Dominion therefore should be deemed to have agreed to the statement of undisputed facts filed by Haimil.  In addition, Haimil contends that Dominion acted with "unclean hands," and that, even if the $3.4 million note were outstanding, any claim on that note would be barred by the statute of limitations because the state court action was filed more than six years after the stated maturity of the $3.4 million note.  Haimil did not assert a statute of limitations defense in its pleadings but seeks permission to amend its pleadings to add that defense.

    1. *Subordination Provision*

The first argument is that the payments made when condominium units were sold were required to be applied, either by contract or by law, to the secured $3.4 million note and not to the

5

other obligation that was outstanding between the parties under the $4 million note. In support of that contention, Haimil has cited to language in the unfiled mortgage for the $4 million note that states that such mortgage would be subordinate to the mortgage securing the $3.4 million note. (SJ Motion, Ex. 28) It is plain that such language would have entitled a holder of the $3.4 million note and mortgage to insist, if it so chose, that payments from the proceeds of unit sales be applied to the repayment of the $3.4 million note rather that the $4 million note. However, Hamil has cited no authority for the proposition that Dominion was *required* to apply payments in this way.

Parties who hold secured debts may release their liens on some or all of the collateral that secures their debts and may allow other debts to be paid. The subordination language relied upon by Haimil does not forbid such acts and does not impose a legal obligation on the part of the holder of the $3.4 million note to apply payments first to that note and not to the $4 million unsecured note. In particular, where both notes here were held by the same party, the Court sees nothing in the documents that bars application of payments to the $4 million loan. The Court will leave open the question of whether the parties had reached agreements as to how the prior payments were to be applied. For purposes of summary judgment, however, the Court cannot find that the subordination language has the meaning that Haimil has alleged.

At the Hearing, Haimil also alleged that the subordination language should be construed against Dominion. It is not clear that the language at issue could be construed in the manner that Haimil contends, no matter which party drafted the provision. In addition, no evidence has been presented as to who drafted the language. In fact, Haimil's counsel made a point during argument of noting that the paragraph in which the subordination language appears is in a typeface different from the rest of the document. The Court is not in a position to construe the language against any particular party without any supporting evidence as to which party drafted the provision, and

6

declines the request to do so.

      2. *The Allegation that Payments Exceeded the Principal Amount Previously Due*

Haimil also seeks summary judgment on the ground that the admitted amount of payments that were obtained by the lender from the sale of condominium units, in the years 2008 through 2010, exceed the principal amount that Dominion said was outstanding under all of the outstanding notes as of March 12, 2008.[3] (SJ Motion, Ex. 13). Dominion has not challenged the contention that the amount stated in the March 12, 2008 letter was the amount of the principal that was outstanding as of that date, and it has not challenged the dollar amounts of the payments that were made when the condominium units were sold. Nevertheless, these facts fall short of showing that Haimil is entitled to judgment. Both the $3.4 million note and the $4 million note require payments of interest at the rate of 12% per year (increasing to 2% per month after a default) plus payments of real estate taxes and, in the case of the $3.4 million note, "Additional Interest" equal to a portion of the proceeds from the sale of condominium units. It is undisputed that these amounts are due under the notes, but Haimil simply ignored them in its SJ Motion. In addition, the very piece of evidence that Haimil cited in support of the allegation that the outstanding principal was approximately $7.2 million as of March 12, 2008 said also that there was outstanding unpaid accrued interest as of that date in an unspecified amount. Haimil also submitted exhibits (including an opinion by the state court) that refer to allegations that real estate taxes had not been paid. *See* SJ Motion, Ex. 21.

Haimil therefore has not provided any accounting of the correct amounts due under the notes. Even if all of the Rule 7056 allegations were accepted as true, there is no basis on which

---

[3] The March 12, 2008 letter from Dominion to Haimil's former counsel stated that the principal amount that Haimil owed to Dominion was $7,158,000.00, and also noted that Dominion "has accrued the interest for three years."

7

the Court could conclude that the notes have been fully paid.

    3. *The "Paid-off" Notation*

Haimil has also pointed to a spreadsheet, apparently prepared by Dominion, in which a line item across from a reference to the $3.4 million note contains the words "paid off." Dominion has responded by saying that the spreadsheet computes monies that Dominion borrowed from IDB and that the "paid off" language means that Dominion had paid off its debt to IDB, not that Haimil had paid its obligations to Dominion. Haimil argues that the notation has a different meaning but the spreadsheet itself is the only item submitted to the Court by the parties. Haimil offered no testimony that the spreadsheet refers to the repayment of Haimil's obligations to Dominion. At trial, the parties may argue as to how the notation should be interpreted, and someone who actually prepared the spreadsheet may be able to testify as to the meaning of the notation. The spreadsheet, however, is not sufficient to entitle Haimil to summary judgment.

    4. *Local Bankruptcy Rule 7056-1*

The Court notes that Dominion did not submit a statement in the form required by Local Bankruptcy Rule 7056-1 – namely, a point by point rebuttal of the allegations that were made in Haimil's Rule 7056-1 statement.[4] To some extent, this is a matter of form rather than substance,

---

[4] Local Bankruptcy Rule 7056-1 provides, in relevant part, that
…
> (b) Upon any motion for summary judgment pursuant to Bankruptcy Rule 7056, there shall be annexed to the motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit the statement shall constitute grounds for denial of the motion.
>
> (c) Papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there is a genuine issue to be tried.
>
> (d) Each numbered paragraph in the statement of material facts required to be served by the moving party shall be deemed admitted for purposes of the motion unless specifically controverted by a

as Dominion's papers make clear which points it disputes, even if Dominion did not comply with the explicit requirements of Local Bankruptcy Rule 7056-1.  More importantly, Rule 56 makes clear that the Court must determine whether the admitted facts that have been offered are sufficient by themselves to entitle the moving party to summary judgment, even in the absence of a proper opposition.  *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir.2001) (holding that a "local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law").  Even if the Court were to treat the facts in Haimil's Rule 7056 statement as admitted because of the lack of a response controverting them, those facts still would not entitle Haimil to summary judgment for the reasons stated at the Hearing and set forth herein.

    5.  *Unclean Hands*

Haimil also contends that there is no genuine issue of fact as to its defense that foreclosure should be barred based upon an "unclean hands" defense.  By its very nature, the unclean hands defense requires consideration of many facts, including not only the conduct of the opposing party (Dominion) but the motivations for it and the alleged prejudicial impact on the borrower.  *See Doe v. Deer Mountain Day Camp, Inc.*, 682 F.Supp.2d 324, 338 (S.D.N.Y. 2010), (citing *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 267 N.Y.S.2d 193, 214 N.E.2d 361, 362 (1966)) ("According to New York law, the doctrine of unclean hands requires the defendant to prove that (1) the plaintiff is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the defendant; and (3) the defendant was injured thereby.")  Here, Haimil relies primarily on an allegation that in the state court, in connection with a summary judgment motion filed in the

---

correspondingly numbered paragraph in the statement required to be served by the opposing party.
…

foreclosure action there, Dominion submitted a $1 million dollar note purportedly executed by the principal of Haimil. Haimil filed a motion for contempt arguing that the $1 million note was forged and seeking sanctions against Dominion. Dominion argued that it was not aware that the note was not valid and withdrew its summary judgment motion. The state court determined that the $1 million note was "inauthentic" but denied the contempt motion, and left for trial the impact of the submission of the $1 million note. Haimil has not offered evidence of any prejudice it allegedly suffered from this incident or any reliance it made on any assertions regarding the $1 million note, and summary judgment plainly is not warranted.

Haimil also contends that the back-dating of the $4 million note, which was executed in March 2008 but back-dated to November 15, 2006, entitles Haimil to summary judgment on the unclean hands defense. However, Haimil acknowledges that its representative signed the back-dated note. No legal authorities have been cited as to the significance of the back-dating, and no evidence has been offered as to the reason the note was back-dated, whose idea it was to back-date it, and whether Haimil itself knew of the back-dating. The Court cannot find that the mere back-dating of the note entitles Haimil to summary judgment in its favor on the unclean hands defense.

6. *The Statute of Limitations Defense*

The final two issues raised in the motion relate to the proposed statute of limitations defense. The Court is skeptical as to whether that defense can really be sustained in light of the pleadings in the case, which seem to preclude it. Haimil's counterclaim alleges that various payments in 2008 through 2010 were applied against the $3.4 million note; in its reply, Dominion agreed that the 2010 payment had been so applied. *See* Verified Reply to Counterclaims, dated May 29, 2013 (SJ Motion, Ex. 5, ¶ 28). Both parties acknowledge, therefore, that one or more

part payments occurred after January 1, 2008, which would have the legal effect of reinstating the statute of limitations. *Chase v. Houghton*, 41 A.D.3d 1062, 838 N.Y.S.2d 260, 261-62 (3d Dep't 2007) (noting that a part payment tolls the statute of limitations where there is "a payment of a portion of an admitted debt, made and accepted as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder").

Nevertheless, the motion to amend the pleadings to assert the statute of limitations defense was not opposed in the papers that Dominion filed. Counsel to Dominion argued at the Hearing that it would be prejudicial to allow the defense at this late stage, but no actual prejudice was identified. If Dominion's response is that the limitations period was extended by part payment, then Dominion is not prejudiced because both sides know what payments were made and when they were made.

Although the Court is doubtful as to the strength of the statute of limitations defense under the admitted facts, it will allow the amendment. As to Haimil's request for summary judgment: there is some authority that summary judgment can be sought contemporaneously with a request for leave to amend. *See Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993) (concluding that, absent bad faith or prejudice, a court may consider an affirmative defense raised for the first time on a summary judgment motion; and affirming District Court, which had construed summary judgment motion as also a motion to amend the answer under Rule 15(a)) to add the statute of limitations as an affirmative defense; and at the same time determining that the action was time barred). As noted above, however, Haimil's own pleadings admit that part payments were made, which precludes summary judgment on the statute of limitations defense.

11

CONCLUSION

Haimil may amend its answer to assert the statute of limitations as an affirmative defense.

Haimil's motion for summary judgment is denied.


Dated: New York, New York
March 24, 2015


                                      **s/Michael E. Wiles**
                                      UNITED STATES BANKRUPTCY JUDGE